**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,              )<br>                                                                 )<br>                          Plaintiff,              )<br>                                                                 )<br>vs.                                                           )<br>                                                                 )<br>JUAN JOSE MARTINEZ-LEANOS,       )<br>                                                                 )<br>                          Defendant.          )<br>_____) | Case No. 2:10-cr-00082-LDG-PAL<br><br>**REPORT OF FINDINGS AND RECOMMENDATION**<br><br>(Mtn to Dismiss - Dkt. #15) |

Before the court is Defendant Juan Jose Martinez-Leanos ("Martinez") Motion to Dismiss Based on A Prior Unlawful Deportation (Dkt. #15) filed March 26, 2010, which was referred to the undersigned for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. The court has considered the Motion and the government's Response (Dkt. #16).

**BACKGROUND**

Martinez is charged in a criminal Indictment (Dkt. #1) returned February 24, 2010 with one count of Unlawful Reentry of a Deported Alien in violation of 8 U.S.C. § 1326. The Indictment charges that Martinez was deported and removed from the United States on or about April 10, 1997, and July 5, 2008 pursuant to a removal order issued on April 9, 1997 and that Martinez was deported and removed from the United States on or about June 25, 2001 pursuant to a removal order issued on June 25, 2001. The Indictment also alleges that on or about February 17, 2010, Martinez returned and was found in the United States, having unlawfully reentered and remained without the express consent of the Attorney General or his successor, the Secretary for Homeland Security, under 6 U.S.C. §§ 202(3) & (4) and 6 U.S.C. § 557. In the current motion, Martinez challenges the lawfulness of the April 9, 1997 removal order on the basis that he was not offered an alternative to removal–namely, fast track voluntary departure. Martinez challenges the lawfulness of the June 25, 2001 removal order

on grounds that the expedited removal statute under which he was removed violated his right to equal protection.

On January 10, 1997, Martinez was convicted on felony burglary in Clark County District Court in Las Vegas, Nevada under the name Juan Martinez and was sentenced to three years in state prison. See Attachment to government's Response at 1-4.  Subsequently, on February 25, 1997, Martinez was convicted of felony attempted burglary under the name Juan Ruiz, and he received a two-year suspended sentence.  Immigration & Naturalization Service initiated removal proceedings against Martinez by issuing a Notice to Appear.  *See* Exhibit A to Motion to Dismiss.  The Notice to Appear alleged that Martinez was removable on two grounds–first, entry without inspection under the Immigration & Nationality Act ("INA") § 212(a)(6)(A)(1); and second, as an alien convicted of a crime involving moral turpitude under § 212(a)(2)(A)(i)(I) based on Martinez's conviction for attempted burglary.  At a hearing before an immigration judge, Martinez admitted the facts alleged in the Notice to Appear, conceded both removal charges, and was deported to Mexico on April 10, 1997 pursuant to the immigration judge's order.  *See* Attachment at 7.  This removal order was later reinstated to remove Martinez on July 5, 2008.  *See* Exhibit C to Motion to Dismiss.

On June 25, 2001, Martinez applied for admission into the United States from Mexico at the Grand Avenue Port of Entry in Nogales, Arizona by falsely claiming to be a United States citizen and presenting a false Nevada identification under the name Felipe Martinez.  *See* Exhibit D to Motion to Dismiss.  On the same day, the Department of Homeland Security initiated expedited removal proceedings against Martinez pursuant to the Immigration & Nationality Act ("INA") § 235(b) by serving form I-860, Notice of Expedited Removal, on Martinez.  *Id.*  During the expedited removal proceeding, Martinez admitted that he had used the alias Felipe Martinez and claimed to be a U.S. citizen born in California.  *See* Transcript, attached to government's Response at 10.  He admitted that his true name was Juan Medina-Leanos, and he was a Mexican citizen.  *Id.* at 9.  He stated that he had used a friend's social security card and birth certificate in order to obtain the Nevada identification.  *Id.* at 10.  He also admitted that he had two prior convictions for burglary and that he had been previously been deported from the United States.  *Id.*  The expedited removal order alleged Martinez was removable pursuant to section 212(a)(6)(C)(i) of the INA because he falsely represented himself to be a

2

citizen of the United States for a purpose or benefit under the INA.  *See* Exhibit D to Motion to Dismiss.

On July 24, 2009, Martinez was convicted of possession of controlled substances with intent to sell in violation of N.R.S. 453.337.  *See* Attachment at 12-15.  Defendant was sentenced to twelve to thirty months in Nevada state prison.  *Id.* at 14-15.

**The Parties' Positions**

Martinez alleges that the April 9, 1997 and June 25, 2001 removal orders were obtained unlawfully and cannot be used as an element of the illegal reentry offense alleged in the Indictment.  Specifically, Martinez asserts that there were errors during the removal proceedings of which he was not made aware.  First, the June 25, 2001 removal order was not properly issued because the immigration judge placed Martinez in an expedited removal proceeding.  Martinez argues that the expedited removal violated his right to equal protection because identically-situated non-permanent resident aliens are placed in standard removal proceedings and are not subject to expedited removal proceedings.  He asserts that there is no rational basis for the disparate treatment of identically situated aliens by the Department of Homeland Security ("DHS").  Martinez argues that the statute which permits expedited removal for some immigrants and not others is unconstitutional under the Fifth Amendment's due process clause because it denies certain immigrants equal protection under the law.

Second, Martinez alleges that the April 7, 1997 removal order was not properly issued because he was not advised of his eligibility for fast-track voluntary departure instead of removal.  He asserts that he is neither an aggravated felon nor a terrorist, and the immigration judge failed to advise him that this relief from removal was available.  Moreover, to the extent that Martinez waived his right to appeal, that waiver is invalid because the immigration judge failed to provide him with complete information regarding his right to fast-track departure.

Martinez also contends he is exempted from the exhaustion requirements of 8 U.S.C. § 1326(d).  With regard to the June 25, 2001 removal order, Martinez asserts he exhausted all avenues available for review of that order.  With regard to the April 9, 1997 removal order, Martinez argues that his failure to exhaust should be excused because his waiver of his right to appeal was neither considered nor intelligent because he was not advised of all forms of relief available to him.

3

In response, the government asserts that because Martinez falsely claimed that he was a citizen of the United States, he was properly placed in expedited removal proceedings on June 25, 2001. Relying on *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1448-49 (9th Cir. 1995) (*en banc*), the government argues that Martinez was never actually admitted to this country. As a result, the protections of the due process clause never applied to Martinez. With regard to Martinez's equal protection argument, the government asserts that there is a legitimate and rational reason to treat illegal aliens differently based upon whether they are in the United States or not. Relying on *Abebe v. Mukasey*, 554 F.3d 1203, 1206 (9th Cir. 2009) (*en banc*), the government argues that Congress has sweeping powers when it comes to immigration, and it is entitled to additional deference when it legislates matters pertaining to aliens, and Congress had a rational basis to place aliens who provide no documentation or false documentation in expedited removal proceedings.

With regard to the April 9, 1997 removal order, the government asserts that it was properly entered. The government notes that Martinez bears the burden of showing that he was eligible for fast-track departure rather than expedited removal, and he has presented no facts or circumstances to show a plausible basis for a grant of discretionary relief. Moreover, the government notes that Martinez had been convicted of two burglary related offenses, and the immigration judge was aware of at least one of these convictions because it was alleged in the notice to appear as a serious crime involving moral turpitude, which in part formed the basis for removal. The government also asserts that the immigration judge knew that Martinez had only been in the United States for three years, during which time he was convicted of two burglary-related offenses. Thus, the government argues, there is no plausible grounds to grant Martinez the discretionary relief of fast-track departure.

## DISCUSSION

### A.      The Legal Standard for Collateral Attack of a Prior Deportation Order

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), changed the terminology of the Immigration and Nationality Act ("INA"). Before IIRIRA, aliens who committed aggravated felonies were placed in *deportation* proceedings after being served with an order to show cause. *Ram v. INS*, 243 F.3d 510, 513 (9th Cir. 2001). After IIRIRA, aliens are placed in *removal* proceedings after being served with a notice to

appear. The cases frequently use the terms deportation and removal interchangeably. 8 U.S.C. § 1326(a) makes it a crime for an alien to enter, attempt to enter, or to be found within the United States without consent of the Attorney General after being denied admission, excluded, deported, or removed.

A defendant may collaterally attack a prior deportation or removal to preclude the government from relying on the deportation in a prosecution under section 1326. Such collateral attacks of underlying deportations or removals rely on the Supreme Court's decision in *United States v. Mendoza-Lopez*, which held that the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation. 481 U.S. at 838-39; *see also United States v. Arrieta,* 224 F.3d 1076, 1079 (9th Cir. 2000). After the Supreme Court's holding in *Mendoza-Lopez,* Congress codified when underlying deportations would be subject to such attacks in 8 U.S.C. § 1326(d). This section reiterates the Court's holding in *Mendoza-Lopez,* but it also adds an administrative exhaustion requirement. Pursuant to section 1326(d), an alien may not collaterally attack an underlying deportation proceeding unless he demonstrates that: (1) he exhausted his administrative remedies to seek relief against the deportation order; (2) the deportation proceeding improperly deprived him of the opportunity for judicial review; and (3) the order was fundamentally unfair. The Ninth Circuit has held that a defendant must demonstrate that his due process rights were violated by defects in his underlying deportation proceeding, and that he suffered prejudice as a result of the violation. *United States v. Proa-Tovar*, 975 F.2d 592, 594-95 (9th Cir. 1992) (*en banc*); *Arrieta*, 224 F.3d at 1079.

"In a criminal proceeding, an alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order." *Id. (citing United States v. Estrada-Torres,* 179 F.3d 776, 780-81 (9th Cir. 1999)), *cert. denied*, 531 U.S. 864 (2000), *overruled on other grounds by United States v. Rivera-Sanchez,* 247 F.3d 905 (9th Cir. 2001)). The exhaustion requirement in section 1326(d) cannot bar collateral review of a deportation proceeding unless the waiver of the right to administrative appeal comports with due process. *United States v. Muro-Inclan,* 249 F.3d 1180, 1183 (9th Cir. 2001). A waiver of appeal is valid and comports with due process when it is both "considered and intelligent." *Arrieta*, 224 F.3d at 1079. "Such a waiver is not 'considered and intelligent' when 'the record contains an inference that the petitioner is eligible for relief from

5

deportation,' but is not "advise[d] . . . of this possibility and give[n] . . . the opportunity to develop the issue.'" *Muro-Inclan*, 249 F.3d at 1182 (*quoting Arrieta,* 224 F.3d at 1079 (internal quotation omitted)). If the waiver is not considered and intelligent, the deportee is deprived of judicial review in violation of due process. *United States v. Lopez-Vasquez*, 1 F.3d 751, 753-54 (9th Cir. 1993) (per curiam). The government bears the burden of proving the waiver. *Id.*

When a defendant moves to dismiss an indictment under § 1326 based on a violation of due process in the underlying removal proceeding, he must also show that prejudice resulted from the violation of his due process rights. *Muro-Inclan*, 249 F.3d at 1184. "To establish prejudice, petitioner does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." *Id.* (citation and internal quotation omitted).

**B.     Equal Protection Challenge to June 25, 2001 Removal Order.**

Martinez challenges 8 U.S.C. § 1225(b)(1) as a violation of his right to due process under the Fifth Amendment because it deprives him of his right to equal protection under the laws. The statute, added to the INA by IIRIRA, established the expedited removal process and provides:

> (b)(1)   Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled
> (A)     Screening
>
> (i)     In general
>
> If an immigration officer determines that an alien...who is arriving in the United States...is inadmissible under section 1182(a)(6)(C) [misrepresentation or fraudulent documentation] or 1182(a)(7) [no valid documentation] of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien removed from the United States without further review indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

Id.

Martinez argues that identically-situated non-permanent resident aliens can either be placed into a removal proceeding before an immigration judge under § 1229a or in an expedited removal proceedings in which they are not permitted to appear before an immigration judge under § 1225(b)(1). In an ordinary removal proceeding, an alien is eligible for relief from removal; in an expedited removal proceeding, however, he or she is not. Martinez asserts that there is no rational basis to make the distinction between identically-situated non-permanent resident aliens, and the DHS's "interpretation of

the expedited removal procedure and creation of a smaller subset of non-permanent resident aliens has resulted in an unequal practice." Motion at 5:12-13. The government responds by pointing to the jurisdiction stripping provisions of the expedited removal statute and by citing cases to show that immigrants within the United States–even illegally–have due process rights, but those outside the country who are stopped and denied admission at the border because they either cannot document their legal status or provide false documentation do not have the same rights.

Congress enacted the expedited removal procedure because it found that "thousands of aliens arrive in the U.S. at airports each year without valid documents and attempt to illegally enter the U.S." H.R. Rep. No. 104-469(I) at 158 (1996). Martinez's argument ignores the fact that immigrants subject to § 1225 are those who have either presented no documentation or submitted false documentation at the U.S. border. Congress had a rational basis–namely, attempting to control the thousands of aliens who present themselves for admission into the U.S. with false or invalid documentation–for placing these immigrants in expedited removal proceedings. Martinez was not identically situated to other immigrants subject to §1229a. He was stopped at the border on June 25, 2001 when he attempted to re-enter the United States using a false driver's license. He was placed in an expedited removal proceeding the same day.

The Ninth Circuit has stated that although all individuals within the United States are afforded due process, the Attorney General's discretion in treating certain immigrants differently than others does not implicate "fundamental rights or involve[] a classification along suspect lines," and therefore, "only rational basis scrutiny applies." *United States v. Calderon-Segura*, 512 F.3d 1104, 1107 (9th Cir. 2008); *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002); *see also Heller v. Doe*, 509 U.S. 312, 319-20 (1993) (stating "a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of reliability....Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of the treatment and some legitimate governmental purpose"). The Ninth Circuit has also recognized that "Congress has particularly broad and sweeping powers when it comes to immigration, and is therefore entitled to an additional measure of deference when it legislates as to admission, exclusion, removal, naturalization or other matters pertaining to aliens. *Abebe v. Mukasey*, 554 F.3d 1203, 1206 (9th Cir. 2009). Here,

Martinez was an alien seeking admission into the United States based upon his false claim of U.S. citizenship. His due process rights were not violated because he was placed in expedited removal proceedings.

### C.  Challenge of April 9, 1997 Removal Order.

Martinez challenges the April 9, 1997 Removal Order on the grounds that voluntary departure was available to him, and the immigration judge neglected to inform him of his eligibility for relief from removal. As a result, Martinez argues his right to due process was violated, the removal order was illegally entered, and his waiver of appeal was invalid. In response, the government asserts that although Martinez may have been statutorily eligible for voluntary departure, he cannot demonstrate prejudice because he can not show there were plausible grounds he would have received this discretionary relief because of his convictions for two burglary-related offenses coupled with his short residency in the United States.

As a general matter, "voluntary departure is intended, in part, to allow an alien faced with removal to have a reasonable period of time before departing to make arrangements for any interests he or she may have in the United States." *Tovar-Landin v. Ashcroft*, 361 F3d 1164, 1167 (9th Cir. 2004). Voluntary departure is a privilege created by Congress, and aliens have no fundamental right to discretionary relief from removal for due process and equal protection purposes. *Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003). In determining whether to grant voluntary departure, the agency is required to balance favorable and unfavorable factors. Favorable factors include: family ties in the United States, residence of long duration, hardship if relief is not granted, service in the United States' armed services, history of employment, existence of business or property ties, evidence of value or service to the community, proof of rehabilitation if a criminal record exists, and other evidence attesting to good character. Unfavorable factors include: nature and circumstances of the grounds for removal, additional violation(s) of immigration law, the existence, seriousness, and recency of any criminal record, and other evidence of bad character. *See Campos-Granillo v. INS*, 12 F.3d 849, 852 n.8 (9th Cir. 1994). Martinez bears the burden to show there was "plausible grounds" that he would have received this discretionary relief. *See U.S. v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998).

///

Here, Martinez asserts he was statutorily eligible for relief from removal because he is neither a terrorist nor an aggravated felon. As a result, Martinez is correct that voluntary departure should have been explained to him. However, Martinez has not shown plausible grounds that he would have been granted this relief. His statement that he is neither an aggravated felon nor a terrorist is insufficient, and he has not provided any information indicating there were favorable factors the immigration judge could have considered to grant discretionary relief. Rather, the only factors in the record for the court to consider are the unfavorable factors that Martinez had a recent criminal record and that he had not been a resident of the United States for a long duration. The immigration judge found Martinez removable because (a) he had been convicted of a crime involving moral turpitude and (b) had only been in the U.S. for three years during which time he sustained two convictions for burglary related offenses. Because Martinez cannot show plausible grounds that he would have been granted relief from removal, he was not prejudiced by the immigration judge's failure to advise him of voluntary departure. Accordingly, the April 9, 1997 removal order and its reinstatement on July 5, 2008 were properly entered.

For all of the foregoing reasons,

**IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that Martinez's Motion to Dismiss Based on Prior Unlawful Deportation (Dkt. #15) be **DENIED.**

Dated this 26th day of April, 2010.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE